E-FILED
Friday, 28 November, 2025  11:35:03 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 1:24-cv-01269-JEH-RLH |
| v. | ) ) ) ) | |
| ALTO INGREDIENTS, INC., Defendant. | ) ) ) ) ) | |

**MOTION TO COMPEL PRODUCTION OF EMAILS AND PERSONNEL FILES**

Plaintiff, Equal Employment Opportunity Commission (the "EEOC"), pursuant to Federal Rules of Civil Procedure 34 and 37, respectfully moves this Court for an Order compelling Defendant to search for and produce documents – namely, electronic communications relating to the former employee for whom the EEOC seeks relief, Mark Butcher, as well as the personnel files and disciplinary records of the decisionmakers involved in his termination. Despite repeated assurances, Defendant has failed to conduct any meaningful search for responsive documents and only produced a handful of highly relevant emails after deposition questions by the EEOC revealed their existence. For these reasons, Plaintiff requests that the Court compel Defendant to conduct a prompt, thorough, and complete search for and production of responsive documents, as required under the Federal Rules. In support of this Motion, the EEOC states as follows:

**BACKGROUND**

The EEOC filed this civil rights action alleging that Defendant Alto Ingredients ("Alto") unlawfully terminated Mark Butcher on the basis of disability.

On November 27, 2024, the EEOC served its First Request for Production of Documents. See Ex. A. The Requests defined "documents" to include "electronically stored" information, such as "email" and "personnel records." See Ex. A. at 1-2, Ex. B at 2-3.

EEOC Request 11 sought of "all documents in the possession, custody, or control of Defendant that refer or relate to Mark Butcher." Request 9 sought "all documents, information, or data regarding any employee or former employee identified in Plaintiff's or Defendant's initial disclosures, including but not limited to the following: applications, performance evaluations, documents relating to personnel actions, actual and proposed disciplinary actions, records of reprimands." With its discovery requests, and pursuant to Rule 34(b)(1)(E)(ii), the EEOC specified a Format of Production and Load File Specifications. Ex. B at 10.

In its initial response, Alto objected to Request 9 and declined to produce documents, asserting that it was "vague, ambiguous, and overbroad; This request seeks private information which is protected from disclosure." Ex. C at 5. As to Request 11, Alto raised several objections but stated that it would produce all non-privileged responsive documents. Ex. C at 5. Alto did not produce any documents responsive to Request 9, nor did it produce any emails, texts, or other electronic communications responsive to Request 11.

On March 10, 2025, the EEOC sent Alto a letter pursuant to Rule 37(a)(1), identifying deficiencies in the responses and outlining the additional information needed. Ex. D. The parties met and conferred on March 31, 2025. During that discussion, the parties resolved a number of discovery disputes. Relevant to this motion, the EEOC agreed to narrow Request 9 to exclude medical, banking, and payroll records and Alto agreed to provide responsive documents. Defendant also agreed to search for and produce email communications responsive to Request 11.

Despite this agreement, Defendant produced no materials responsive to either Request. The parties conferred again on April 30, 2025, and Alto reaffirmed its agreement to produce responsive materials but stated that production would not occur until the first week of June.

On May 9, 2025, the Court held a hearing on the EEOC's Motion for Hearing Concerning Discovery Dispute.  (ECF No. 12).  Although Requests 9 and 11 were among the discovery disputes referenced in the EEOC's motion, based on Alto's agreement that it would produce documents in June, the EEOC believed at the time that these agreements were among the "several ... disagreements" that the parties had resolved. See Motion, ECF No. 12, ¶ 3.

On June 1, 2025, Alto served amended discovery responses and produced additional documents. Ex. E. However, the June 1 production did not include any employee files responsive to Request 9 or any email communications responsive to Request 11. The amended responses did not describe any search for responsive electronically stored information.

On several occasions, including June 11, June 23, August 4, August 7, and August 8, 2025, the EEOC contacted Alto by phone and email to address these deficiencies while working with Defendant to schedule depositions in August. Alto represented that it would conduct searches and produce responsive documents before the depositions.

However, Alto did not do so. As a result, and due to the approach of the September 30, 2025 discovery deadline then in place, the EEOC moved forward with deposing key Alto employees in August 2025 without having received documents responsive to Requests 9 and 11.

On August 12, 2025, the EEOC deposed Larry Brent, Alto's Human Resources Manager and a central figure in the decision to terminate Mark Butcher's employment. In response to questions by the EEOC, Mr. Brent readily testified that he and other senior Alto personnel had exchanged emails specifically discussing Mark Butcher and the decision to terminate him. Ex. F,

Brent Dep. 66-69, 74. He identified multiple participants in these email exchanges, including Defendant's Vice President for Human Resources and other senior company officers.

Prior to the deposition of Mr. Brent, Defendant had never disclosed that the company's officers discussed Mark Butcher's termination by email. The EEOC immediately requested that Alto produce these and any other relevant emails without delay.

On August 13, 2025, Alto produced twelve pages containing the email communications mentioned by Mr. Brent at his deposition, in the form of a single PDF file, a file format that did not contain the emails' metadata. As Mr. Brent had testified, the emails showed a discussion among Defendant's most senior leaders and officers regarding Mark Butcher and whether the company should terminate him. Defendant did not provide information describing how it searched for the emails, who collected them, or whether the twelve pages represent the complete set of responsive communications. Alto has not represented that it has searched for any responsive communications beyond the ones specifically mentioned by Mr. Brent.

On August 18, 2025, the EEOC sought another hearing before this Court, to address Defendant's deficient responses to Requests 9 and 11.  On September 15, 2025, this Court held a hearing and requested that the parties file motions concerning outstanding disputes.[1]

As of the date of this motion, Alto has also not produced any employee files, personnel documents, or other materials responsive to Request 9.  Nor has it supplemented its production of electronic documents regarding Mark Butcher, in response to Request 11.

---

[1] The parties' respective motions to compel were originally to be filed by October 16, 2025.  See September 30, 2025 Text Order.  Following the lapse in government appropriations, this Court subsequently ordered that "the litigation of this matter shall be STAYED until the EEOC's funding is restored and all pending deadlines in this matter will be extended for the same number of days as the EEOC's lapse in funding." (ECF No. 19).  The lapse in appropriations lasted until November 12, 2025, or 43 days.  Accordingly, the October 16, 2025 deadline for filing motions was extended to November 29, 2025.

## **DISCUSSION**

This Court should order Defendant to search for and produce all documents responsive to Requests 9 and 11, including email and personnel files, describe its search efforts, and provide all responsive documents in file formats that comply with Rule 34 and the EEOC's requests.

I.    **The EEOC's Request for email documents regarding Mark Butcher is relevant and Defendant's search and production is badly inadequate.**

There is no dispute that the materials sought by Request 11 are relevant. Defendant does not dispute this, and has, on the contrary, repeatedly assured the EEOC that a production was forthcoming. Despite repeated assurances, and over a period of months prior to the August depositions, Defendant did not produce any documents or state that it had even looked. For example, Defendant does not appear to have taken such basic and necessary steps as identifying record custodians, running text searches, or collecting responsive documents. This inaction continued until straightforward questions put to Mr. Brent quickly made clear that Defendants' most senior leaders had discussed — over email — the termination decision at the heart of this case. Even after Alto's production of the particular messages referenced by Mr. Brent, it still remains unclear how those emails were collected or who collected them. There is also no indication that, apart from collecting the messages Mr. Brent described, Alto conducted a search for any other responsive materials.

This response to the EEOC's document requests is deficient. Upon receiving the EEOC's requests, in November 2024, Defendant had an affirmative obligation "to ensure that all appropriate sources of data have been searched and that responsive ESI has been collected—and eventually reviewed and produced." DR Distributors, LLC v. 21 Century Smoking, Inc., 513 F. Supp. 3d 839, 927 (N.D. Ill. 2021); United States ex rel. Proctor v. Safeway, Inc., 2018 WL 1210965, at *3 (C.D. Ill. Mar. 8, 2018) ("A party must make reasonable inquiry and certify that

discovery is complete and responsive."). Given that the emails mentioned by Mr. Brent were plainly relevant to the decision at issue in this case and involved multiple senior leaders, any minimally reasonable search would have identified them, as the EEOC did with just a few deposition questions.

Defendant has never represented that it performed any comprehensive search for emails or other ESI, either before or after Mr. Brent's deposition testimony. The limited collection of emails Defendant did produce on August 13 appear to have been identified only because they were specifically mentioned during deposition testimony – a simple "react[ion] to plaintiff's fortuitous discovery of the existence of relevant documents." DR Distributors, 513 F. Supp. 3d at 935 ("This trickling production of documents eventually led the court to conclude that plaintiff's counsel had failed to conduct the thorough search for documents required by Fed. R. Civ. P. 34 and awarded sanctions.") (quoting Bd. of Regents of the Univ. of Neb. v. BASF Corp., No. 04 CV 3356, 2007 WL 3342423, at *5-6 (D. Neb. Nov. 5, 2007)).  This is clearly an inappropriate response to discovery, which this Court should remedy.

The EEOC notes that Defendant's production of electronic documents is also deficient in form, as Rule 34 "necessarily encompasses the metadata that inherently exists within the ESI." Javo Beverage Co. v. California Extraction Ventures, Inc., No. 19-CV-1859-CAB-WVG, 2020 WL 2062146, at *8 (S.D. Cal. Apr. 29, 2020); United States ex rel. Proctor v. Safeway, Inc., No. 11-CV-3406, 2018 WL 1210965, at *2–3 (C.D. Ill. Mar. 8, 2018) (ordering that "ESI shall be produced in its unaltered native form and as it is maintained in the ordinary course of business. Such production shall include .opt load files and .dat files that preserve all associated metadata."). Responsive documents should be produced in electronic form and include metadata that is reasonably usable by the EEOC.

Given Defendant's apparent failure to conduct any meaningful search, the highly relevant nature of the deposition emails, the Court should order Defendant to conduct a prompt and thorough search for all responsive documents, explain its search methodology, and produce all documents in full compliance with Rule 34 and the EEOC's requests.

II.    **The EEOC's Request for Personnel Files of Decision Makers is Relevant to the Claims and Defenses of this Case.**

The personnel information requested in EEOC Request 9 is also relevant to the claims and defenses in this case, and should be produced. A key issue in this litigation is whether Defendant's termination of Mark Butcher was disability-related, which makes the credibility of decisionmakers' account of his termination of central importance. Courts "have regularly permitted plaintiffs in employment discrimination cases to discover the personnel files of decision makers" to help shed light on that. Speller v. Am. Ass'n of Neurological Surgeons, No. 20 CV 1983, 2021 WL 2186182, at *3 (N.D. Ill. May 28, 2021); Digan v. Euro-Am. Brands, LLC, No. 10 C 799, 2012 WL 668993, at *5 (N.D. Ill. Feb. 29, 2012) ("[Plaintiff] is entitled to discover the personnel files of the decisionmakers involved in her termination"); Byers v. Illinois State Police, 2002 WL 1264004, at *13 (N.D. Ill. June 3, 2002) ("The personnel files of the individuals alleged to have discriminated against the plaintiffs are clearly relevant.").

The EEOC is entitled to examine personnel files of decision-makers in order to assess their credibility, motivation, and reliability. Job performance, disciplinary records, and history of complaints may bear on the reliability of these witnesses and their approach to or attitudes about employment matters. See, e.g., Saket v. Am. Airlines, Inc., No. 02 C 3453, 2003 WL 685385, at *3 (N.D. Ill. Feb. 28, 2003).  Indeed, one of the individuals involved in the termination decision, Mike Perfetti, testified at his deposition that he was "sure" that he had received workplace discipline while employed at Alto, although he could not recall any details. Ex. G, Perfetti Dep. at

109.

Producing this information will not impose an undue burden on Defendant. The number of people involved in the termination decision is not large – approximately 4-6 – and the EEOC has already limited the scope of Request 9 to exclude medical records, financial information, or information about family members. Any of Defendant's "confidentiality concerns can be alleviated by the confidentiality order already in place." In re Dealer Mgmt. Sys. Antitrust Litig., No. 18 CV 0864, 2018 WL 6413199, at *3 (N.D. Ill. Dec. 6, 2018); see also Protective Order, ECF No. 10.

### Conclusion

For the foregoing reasons, the EEOC respectfully requests that this Court grant the EEOC's Motion and issue an Order compelling Defendant to: 1) conduct a diligent and systematic search for documents responsive to Requests 9 and 11; 2) provide a verified description of its search and collection methodology; and, 3) produce and/or reproduce all responsive documents promptly and in the form specified by the EEOC.

Respectfully Submitted,

By: /s/ Greger B. Calhan
Greger B. Calhan
Trial Attorney
Equal Employment Opportunity Commission
Minneapolis Area Office
330 2nd Ave S #720
Minneapolis MN 55401
greger.calhan@eeoc.gov
(612) 552-7323
-and-
Anne Gallerano
Trial Attorney
Chicago District Office
230 S. Dearborn St., Suite 2920
Chicago IL 60604
Phone: (312) 872-9669

Email: anne.gallerano@eeoc.gov
Attorneys for Plaintiff, EEOC

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on November 28, 2025, I caused the following documents (Motion to

Compel) to be filed electronically and served on the defendant through counsel, at the email

address stated below.

Matthew J. Durket
Law Office of Matthew J. Durket, A PC
2222 Francisco Drive, #220-140
El Dorado Hills, CA 95762
916-941-5291
mjd.law@me.coms

/s/ Greger Calhan
Greger B. Calhan

Trial Attorney
**Equal Employment Opportunity
Commission**
Minneapolis Area Office
330 2nd Ave S #720
Minneapolis MN 55401
greger.calhan@eeoc.gov
(612) 552-7323