E-FILED
Wednesday, 25 March, 2026  03:30:07 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF ILLINOIS PEORIA DIVISION**

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) ) | CIVIL ACTION NO. 1:24-cv-01269-JEH-RLH |
| v. | ) ) ) ) | |
| ALTO INGREDIENTS, INC., Defendant. | ) ) ) ) | |

**DEFENDANT ALTO INGREDIENTS, INC.'S, MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Defendant Alto Ingredients, Inc. ("Alto") pursuant to Federal Rules of Civil Procedure 34 and 37, respectfully moves this Court for an Order compelling Plaintiff EEOC to search for and produce documents – including , electronic communications relating to (1) documents relating to Mark Butcher, including communications referencing him and any prior complaints he has filed; and (2) limited materials concerning EEOC investigator J'Ana Diamond, who appeared for a deposition but was instructed not to review her file. The EEOC is aware of the existence of a prior rejected charge by Mr. Butcher but refuses to produce any documents.  The EEOC investigator Diamond indicated that she spoke to Mr. Butcher, but there are no notes in the file produced in this matter.

As for the requested personnel records related to investigator Diamond, Alto is only asking for those documents related to training and discipline (which is identical to those documents the EEOC compelled from Alto decision makers). For these reasons which are further detailed below, Alto requests that the Court compel the EEOC to conduct a prompt, thorough, and complete search for and production of responsive documents, as required under the Federal Rules.

## STATEMENT OF CASE

Mark Butcher was hired by Alto in October 2020 as an electrician to work in Alto's ethanol plant in Peoria, Illinois.  The plant itself is a towering labyrinth of multiple buildings with high platforms, cramped spaces, narrow and open ladders, multiple open belt manlifts, and steep stairwells.  At the time he applied for the position, Mr. Butcher indicated on one form that he was a "Disabled Veteran", although on another form he did not check that box[1].  Regardless, Mr. Butcher never indicated he had any limitations and never asked for an accommodation from Alto either at the time of his interview or during his brief employment.

At beginning of his employment, Mr. Butcher was subject to a 90-day Probationary Period wherein his managers and coworkers were observing and evaluating his performance.  The feedback Alto received was that Mr. Butcher had stumbled and had instability navigating the plant, difficulty working on and using ladders, had trouble utilizing the belt manlifts[2], and stairwells.  He had stumbled, fell and was not able to work for an appreciable period with his hands above his head.  As an electrician it was essential that he was proficient and could safely navigate the plant and its multitude of ladders, belt manlifts, and tight and steep stairwells.   Electricians often worked alone and safety is a priority for Alto.

At Mr. Butcher's 60-Day Review[3], and before the end of his 90-Day Probation Period, he was informed that he would not be retained based on his instability.  Alto told Mr. Butcher that it was terminating him because of Alto's concern for his safety and well-being.  Prior to making that decision, Alto considered possible accommodations, even though one was never requested.

---

[1] At his deposition Mr. Butcher testified that he generally told prospective employers that he checked the box because they would get a tax credit for hiring a disabled veteran.  However, he never requested any accommodation or presented any limitations.

[2] A belt manlift is a continuously moving vertical conveyor belt equipped with steps and handholds, designed to transport personnel between floors in high-rise structures like grain elevators. A worker must time their steps on and off as the belt continuously moves.

[3] His review consisted of ratings between "FAIR" and "POOR".

Ultimately, Alto concluded that no accommodations were available which would ensure Mr. Butcher's safety and prevent serious injury or worse.

## DISPUTED DISCOVERY

On September 22, 2025, Alto propounded its "Second Requests for Production of Documents to Plaintiff" (Exhibit A). Request 2 stated: "Produce all documents, information or data regarding all Complaints YOU made to the EEOC prior or subsequent to YOUR employment with Alto ingredients, Inc." In its response of December 4, 2025, EEOC stated. "See the EEOC's response to Request No. 1, above. Subject to and without waiving these objections: Subsequent to his employment at Alto, Mark Butcher filed an EEOC charge against Defendant that led to the institution of this action, and the EEOC has previously disclosed the nonprivileged portions of the investigative file." (Exhibit B)

The referenced response to Request No. 1 included the following: "The EEOC objects to the extent that this Request seeks documents regarding any EEOC charge that did not result in the institution of a lawsuit. *See* 42 U.S.C. §§ 2000e-5(b), 2000e-8(e); 29 C.F.R. § 1601.22; 29 C.F.R. § 1601.26; *see also* the EEOC's response to Defendant's Interrogatory No. 1. Additionally, the Privacy Act of 1974 prohibits the disclosure of "any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b). *See, e.g., E.E.O.C. v. Olsten Staffing Servs. Corp.*, 627 F. Supp. 2d 972, 975 (W.D. Wis. 2009) ("Under federal law, plaintiff cannot disclose its investigatory file or information concerning the conciliation with Main Street to a third party.") except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains." 5 U.S.C. § 552a(b). *See, e.g., E.E.O.C. v. Olsten Staffing Servs. Corp.*, 627 F. Supp. 2d 972, 975 (W.D. Wis. 2009) ("Under federal law, plaintiff cannot disclose its investigatory file or information concerning the conciliation with Main Street to a third party.")

3

On January 19, 2026, Alto propounded its "Third Requests for Production of Documents to Plaintiff" (Exhibit C).  Request 1 stated: "Produce all documents in the possession, custody, or control of Plaintiff EEOC that refer or relate to Mark Butcher, including, but not limited to J'Ana Diamond, including but not limited to the following: emails, text messages, instant messages, or other electronic communications; internal EEOC correspondence; investigator notes, memoranda, or summaries; and communications with third parties referencing Mark Butcher. This request includes all electronically stored information."

The EEOC did not formally respond, but communicated its position in a February 26, 2026, email that stated. " ECF 22. The requests for production do not fit into these categories, and so the earlier January 27 deadline would apply.  Second, I can confirm that the EEOC has searched for and produced all responsive, non-privileged documents in its possession. Third, I would refer back to our response to your Request No. 2. The sufficiency and conduct of the EEOC's pre-suit investigation is not a proper subject for discovery under Caterpillar, and the disclosure of the requested documents is not permitted by the Privacy Act of 1974" (Exhibit D)

On March 5, 2026, Alto took the deposition of Investigator J'ana Diamond pursuant to a Notice of Deposition to which the EEOC originally objected but later conceded with guidance by this court.  That NOD requested Investigator Diamond:  **1. Investigation File** - Please produce any and all documents, records, notes, correspondence, memoranda, emails, reports, recordings, or other materials in your possession, custody, or control that relate to or form part of your investigation file concerning this matter. This request includes but is not limited to internal notes, witness interview summaries, communications with the parties, investigatory findings, and any draft or final reports. **2. Mark Butcher's Complaint File** - Please produce any and all documents, records, forms, notes, correspondence, or other materials in your possession, custody, or control that relate to or arise from the EEOC complaint filed by Mark Butcher. This request includes, without limitation, the charge of discrimination, intake notes, supporting exhibits or attachments, amendments, and any communications related to the processing of Mr. Butcher's complaint. 3. **Mark Butcher's Entire**

4

**File** - Please produce any and all documents, records, files, or other materials maintained by the EEOC related to Mark Butcher, including but not limited to his entire EEOC case file, all prior or related charges filed by him, any correspondence between Mr. Butcher and the EEOC, and any investigatory or administrative records connected to his matters before the EEOC.

The EEOC refused to produce Investigator Diamond and Alto intended to bring a motion to compel her attendance.  At an IDC on March 13, 2026, the court provided guidance upon which the parties met and conferred.  Based thereon the deposition went forward, but Investigator Diamond produced no document and failed to review her investigative file in preparation for the deposition.

## DISCUSSION

**EEOC Documents which reference Mark Butcher**: The requested documents fall into two categories and were propounded in Alto's Request for Production of Documents, Set Two and Three ("RFP) and the documents requested as part of the Deposition Notice of Investigator Diamond ("Diamond NOD").

The first category involves documents related to Mr. Butcher's including but not limited to other claims against prior employers. (This request is encompassed in RFP, Set Three, No. 1 and NOD – Document Requests) The EEOC has acknowledged that it has files related to Mr. Butcher's previous claim(s) against other employers.  However, it asserts that all documents presented to EEOC are protected from disclosure, even documents generated by Mr. Butcher.

Clearly these documents are likely to contain material that "is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevance to be broadly construed because the "purpose of discovery is to help 'define and clarify the issues.'" *Doe v. Loyola Univ. Chi.*, No. 18-cv-7335, 2020 WL 406771, at *2 (N.D. Ill. Jan. 24, 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). As such, the EEOC bears the burden of showing it is improper. *Id.*

Documents related to Mr. Butcher also encompasses non-privileged notes from the EEOC's investigation.  During the deposition of the Investigator Diamond, she testified that she was told not

to prepare for the deposition even though her investigation took place almost five years prior to her deposition.  (Ex A to Decl. of MJD, Diamond Depo pg. 49:12 – 50:7) Moreover, she was asked to produce at her deposition all documents and notes from the investigative file (NOD Request No. 1 and 2).  Her testimony was:

> *Q In this document I requested some documents to be brought to this deposition from you, an investigation file with all the notes and all documents and records and notes and correspondence.  Did you bring any documents with you?*
> ***A I did not.***
> *Q And then I also asked --*
> *MR. CALHAN: Matt, if I could jump in for a moment.*
> *MR. DURKET: Sure.*
> *MR. CALHAN: The three requests, document requests that you put that you attached with the notice, I think all of those, in fact I know that all of those documents you've requested before and have been produced or are subject to a privileged or a statutory prohibition on disclosure.*
> *Q Okay. Well, let me ask Ms. Diamond about that. At any time did you produce documents to the EEOC attorneys in this case?*
> ***A I did not.*** *(Ex A to Decl. of MJD, Diamond Depo pg. 11:18 – 12:23)*

Investigator Diamond also testified that although she did not do the initial intake interview with Mr. Butcher, she conducted a follow up interview on December 20, 2022.  She testified:

> *Q So on this line that we're looking at for December 20th, 2022, does that mean that there is interview notes from a call with charging party?*
> *MR. CALHAN: Objection to form.*
> ***A There could be.***
> *Q And when it says asked him follow-up questions, you don't know who put that note there, correct?*
> ***A I think I put this note in there.*** *(Ex A to Decl. of MJD, Diamond Depo pg. 62:18 – 63:3)*

>    * * *
> *Q Generally in your practice would there be notes reflecting what he told you in this call?*
> *MR. CALHAN: Objection to form.*
> *A If it was relevant important information, there would likely be a note in Arc on the phone call for the follow-up questions.*
> *Q And do you have any recollection as you sit here now whether or not he gave any relevant information in that follow-up call?*
> ***A I don't***. *(Ex A to Decl. of MJD, Diamond Depo pg. 63:16 – 64:2)*

>    * * *
> *Q Did you ever write any notes about a conversation that you had with Mr. Butcher?*
> ***A I believe so.***
> *Q And if you did, they would be in the file, correct?*
> ***A Yes.***  *(Ex A to Decl. of MJD, Diamond Depo pg. 101:12 – 17)*

No notes made by Investigator Diamond have been produced to Alto.

**Documents Related to Discipline and Training of Investigator Diamond's.**

Alto's Request for Production of Documents, Set Three ("RFP) requested documents regarding Investigator Diamond maintained by the EEOC. Although broad in scope, the parties met and conferred and Alto agreed to limit the types of documents to exclude any materials that are not related to "discipline, evaluation, review or training". The EEOC remains resolute in opposing the production of even these limited materials, notwithstanding the Protective Order entered in this case[4].

## DISCUSSION

### I. THE DISCOVERY OF MARK BUTCHER'S PRIOR COMPLAINTS AND NOTES OF HIS COMMUNICATIONS WITH THE EEOC IS RELEVANT AND DISCOVERABLE.

**A. The Federal Rules of Civil Procedure Favors Broad Discovery.**

Federal Rule of Civil Procedure 26(b)(1) defines the scope of permissible discovery, allowing parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Fed. Rules Civ. Proc. Rule 26.* This rule establishes both relevance and proportionality as essential limitations on discovery. Mr. Butcher's prior complaints may bear on his perceptive reliability and recollection and may lead to additional witnesses to undermine his recollection and reliability as well as bear upon his credibility.

Producing this information will not impose an undue burden on the EEOC. Any of the EEOC'S "confidentiality concerns can be alleviated by the confidentiality order already in place." *In re Dealer Mgmt. Sys. Antitrust Litig.,* No. 18 CV 0864, 2018 WL 6413199, at (N.D. Ill. Dec. 6,

---

[4] The Court will recall the EEOC's reliance on the Protective Order when seeking the personnel files of Alto personnel.

2018); See also Protective Order, ECF No. 10.

## CONCLUSION

For the foregoing reasons, Defendant Alto Ingredients, Inc. respectfully requests that this Court order Plaintiff EEOC to search for and produce documents – including , electronic communications relating to (1) documents relating to Mark Butcher, including communications referencing him and any prior complaints he has filed; and (2) limited materials concerning EEOC investigator J'Ana Diamond, who appeared for a deposition but was instructed not to review her file.

Respectfully Submitted,

By: /s/ Matthew J. Durket
Matthew J. Durket
2222 Francisco Drive, No. 220-272
El Dorado Hills, California 95762
mjd.law@me.com
916-941-5291
Attorneys for Defendant,
Alto Ingredients, Inc.