E-FILED
Monday, 29 June, 2026  03:06:12 PM
Clerk, U.S. District Court, ILCD

**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

U.S. EQUAL OPPORTUNITY
COMMISSION,
    Plaintiff,

v.

ALTO INGREDIENTS, INC.,
    Defendant.

Case No. 1:24-cv-1269

**Order**

Now before the Court is the Plaintiff, U.S. Equal Employment Opportunity Commission's ("EEOC") Motion for Partial Summary Judgment on Liability and Direct Threat Affirmative Defense (D. 37).[1] For the reasons set forth below, the EEOC's Motion is denied.

**I**

The EEOC filed this Motion on April 30, 2026. The Defendant, Alto Ingredients, Inc. ("Alto") timely filed a response. (D. 39). The EEOC timely replied. (D. 46). The Motion is therefore ripe for disposition.

**II**

This case centers on the EEOC's allegations that Alto fired Mark Butcher because of his disability. On September 24, 2020, Mr. Butcher applied to work for Alto as an Instrument Electrician. Alto arranged an initial interview for Mr. Butcher, conducted by two of Alto's supervisors (Don Archdale and Mike Perfetti). During that interview, Mr. Butcher disclosed to Alto that he was "a disabled vet." (D. 37-1 at ECF p. 184). Specifically, he testified that he: has "pain in [his] back", "since 1985",

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

1

was "going through a lot of pain, and sometimes [his] leg buckles a little bit, and [he catches] himself, and [he is] good." (*Id*. at ECF p. 184; 186; 209).

Mr. Butcher then underwent a second interview with Alto, after which Alto's managers recommended he be hired. Prior to officially being hired, Alto required Mr. Butcher to complete a "pre-hire medical examination" and a "Job Task Assessment". (D. 37 at ECF p. 8). He completed both steps to Alto's satisfaction, and, on October 16, 2020, Alto hired him as an Instrument Electrician.

Alto then commenced a 60-day performance review period and 120-day probationary period. During that time, the supervisors reportedly received feedback from other employees that Mr. Butcher had trouble navigating the plant, using ladders, working with his hands above his head, and other physical infirmities. On January 14, 2021, Alto's supervisors suspended Mr. Butcher and recommended him for termination. Soon after, he was terminated.

In response to his termination, Mr. Butcher, via the EEOC, filed the pending action. The Complaint seeks both actual and punitive damages, as well as injunctive relief, for unlawful termination under the ADA and accompanying "emotional pain, suffering, loss of enjoyment of life and humiliation". (D. 1 at ECF p. 6). In the pending Motion, the EEOC seeks summary judgment as to liability and Alto's "direct threat" defense.

### III

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323-24. Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrate that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck,*

2

*N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993). "The parties must support their assertions that a fact cannot be or is genuinely disputed by citing to 'particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .'" *Horton v. Pobjecky,* 883 F.3d 941, 948 (7th Cir. 2018). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment . . . [I]t is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* at 248. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." *Anderson*, 477 U.S. at 255 (1986). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to successfully oppose a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 250. "The same standard applies when considering cross-motions for summary judgment." *City of Chi. v. Equte LLC*, 693 F. Supp. 3d 879, 889 (N.D. Ill. 2023) (citing *Int'l Bhd. of Elec. Workers, Loc. 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002)). Therefore, when considering the Plaintiff's Motion for Summary Judgment, the Court views all the evidence in the light most favorable to Defendants, and when considering Defendants' Motion for Summary Judgment, the Court views all the evidence in the light most favorable to the Plaintiff. *Id.*

**IV**

3

The EEOC argues that there exists no genuine dispute of fact as to whether Mr. Butcher was disabled under the ADA, qualified to perform the essential functions of his job, and terminated because of his disability. The EEOC further argues that Alto's safety-based defense must be raised as an affirmative defense, but was not, and is therefore waived. The Court will address each argument in turn.

## A

The Court will first determine whether the EEOC has carried its burden that Mr. Butcher is "disabled" under the ADA. "Under the ADA, a 'qualified individual with a disability' is one who, with or without reasonable accommodation, can perform the essential functions of the job." *Peters v. City of Mauston*, 311 F.3d 835, 842 (7th Cir. 2002) (citing 42 U.S.C. § 12111(8)). The ADA "further specifies that an individual has a disability if she possesses '(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.'" *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 748 (7th Cir. 2011) (quoting 42 U.S.C. § 12102(1)).

It is not in dispute that Mr. Butcher is disabled under the ADA via his sciatica and chronic neck and back pain. Indeed, in its response to the EEOC's fact statement, Alto "has admitted … that Mr. Butcher was disabled within the meaning of the ADA", and that "Mr. Butcher's back injury and sciatica substantially limited the major life activities of walking and standing." (D. 38 at ECF p. 2).

The dispute, then, hinges on whether Mr. Butcher "can perform the essential functions of the job." *Peters*, 311 F.3d at 842. In the EEOC's opinion, "[n]o reasonable trier of fact could conclude that Butcher was unable to perform the essential functions of the Instrument Electrician job." (D. 37 at ECF p. 16). Those essential elements include "maintaining, troubleshooting, and repairing plant electrical systems and instrumentation., as well as moving around the facility and climbing stairs and ladders as needed." *Id.* In support, the EEOC avers that Alto's supervisors "repeatedly

praised" Mr. Butcher's performance, and acknowledged that his termination "had nothing to do with his electrical competence." *Id*. Further, the EEOC argues that Mr. Butcher's physical impairments did not "prevent[ ] him from performing the essential functions of his job." *Id*. And in fact, the evidence of record demonstrates, Mr. Butcher passed all of his pre-employment medical and physical assessments. The only concerns with Mr. Butcher's job performance, argues the EEOC, originated from second- and third-hand accounts that were then communicated to Alto's supervisors. The EEOC avers that such hearsay cannot create a triable issue of fact.

Alto, meanwhile, argues that Mr. Butcher's physical condition impaired his ability to complete the essential functions of the job. Specifically, Alto argues that Mr. Butcher could not complete the "safe navigation of ladders, belt manlifts, and steep stairwells". (D. 37 at ECF p. 9). Irrespective of whether Mr. Butcher was technically proficient, Alto argues that a reasonable juror certainly could find that (1) safely "mov[ing] around the plant, climb[ing] stairs and ladders …, and perform[ing] maintenance and troubleshooting tasks in an environment containing industrial hazards" are essential functions of the Instrument Electrician position, and (2) Mr. Butcher could not perform those essential functions given his relevant physical limitations.

Interpreting these facts in the light most favorable to Alto, and drawing reasonable inferences in Alto's favor, the Court finds that there exists a genuine dispute of fact as to whether Mr. Butcher could perform the essential functions of his job. Undisputably, Mr. Butcher has physical limitations. It also appears that, as an essential function of his job as an electrician, Mr. Butcher had to navigate stairwells, climb ladders, and operate in an environment that featured industrial hazards. Given (1) Mr. Butcher's relevant physical limitations and (2) Alto's physically-demanding environment, a reasonable juror most certainly could conclude that Mr. Butcher's physical ailments impaired his ability to complete his job at Alto, notwithstanding his undisputed technical proficiency. *See Adas v. Am. Airlines*, No. 98 C 305, 1999 WL

261756, at *3 (N.D. Ill. Apr. 14, 1999) ("Regardless whether Adas' conditions qualify as a disability under the ADA, Adas must demonstrate that he is able to work with or without an accommodation. Adas … has failed to produce sufficient evidence showing that he could perform the essential functions of his job despite his shoulder injury. Adas has not disputed that the essential functions of the Fleet Service Clerk position include loading and unloading cargo …; operating standard transmission vehicles; pushing, pulling, and lifting bags onto or from conveyer belts; hand cleaning which requires reaching, bending, and twisting in confined spaces; reporting to work on a regular and timely basis; and many others as outlined in ¶ 46 of AA's Local Rule 12(M) statement.").[2]

The EEOC's primary argument is that Alto's only competing evidence is hearsay. But the Alto employees who complained about Mr. Butcher's provided affidavits, were identified in discovery, and were deposed. Their comments described that Mr. Butcher: "was not able to work for an appreciable period with his hands above his head"; "struggle[d] to grip the belt manlift and maintain his footing while stepping on the moving lift"; lost "balance momentarily and grabb[ed] a nearby support structure to stabilize himself"; "stumbl[ed] and [fell] on a steep interior staircase"; "struggle[d] to maintain his grip and footing while ascending a ladder"; "was visibly unable to sustain the overhead work position needed to complete [his] assignment; and other similar shortcomings. (D. 39-1 at ECF p. 3–4).

---

[2] Because the Court finds that there is a genuine dispute of fact as to whether Mr. Butcher can perform the essential functions of his job, the Court need not address whether Alto terminated Mr. Butcher "because of" his disability. If there is a dispute as to whether he can perform his job, then implicitly there is a dispute as to why he was terminated. *See Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 865 (7th Cir. 2005) (holding that "an employer is entitled to conclude that termination is warranted solely on the basis of the employee's patent inability to perform his job in manner that meets the essential requirements of that position. This is true even if, after further inquiry, an employer determines that the employee's inability to perform the job 'is due entirely to a disability.'").

This certainly is sufficient evidence, at this stage and with reasonable inferences drawn in Alto's favor, to raise a triable fact as to whether Mr. Butcher could complete the essential functions of the job.[3] The EEOC has failed to carry its burden to the contrary, and the EEOC's Motion is therefore denied. *Stragapede v. City of Evanston*, 69 F. Supp. 3d 856, 864 (N.D. Ill. 2014) (denying motion for summary judgment where "there [was] a genuine dispute of fact as to whether Stragapede could perform the agreed-upon essential functions of the position").

**B**

The EEOC next argues that Alto's argument is really a "direct threat" affirmative defense. Alto, however, did not plead a direct threat affirmative defense; in turn, the EEOC argues that Alto has waived its argument.

The Court finds that application of the direct threat affirmative defense is unnecessary for the Court to deny the EEOC's Motion. The Court holds in Section IV(A) that the EEOC has failed to carry its burden that, as a matter of law, Mr. Butcher could perform the essential functions of the job. That is because a reasonable juror could find that Mr. Butcher's physical condition prohibited him from adequately "mov[ing] around the plant, climb[ing] stairs and ladders …, and perform[ing] maintenance and troubleshooting tasks in an environment containing industrial hazards". That is, even if it was not *dangerous* to himself or others that Mr. Butcher could not consistently climb ladders, adequately maneuver stairwells, hold his arms above his head, or otherwise satisfy the physical conditions of the job, those tasks are nonetheless (arguably) essential functions of the job. Thus, the Court makes its holding irrespective of whether Mr. Butcher poses a direct threat of harm to himself or others. *See Bodenstab v. Cnty. of Cook*, 569 F.3d 651, 659 (7th Cir. 2009) ("Thus, even if Cook County improperly determined that Bodenstab presented a "direct threat" within the meaning of the ADA, summary judgment on the termination claim was

---

[3] The Court also notes that the record does not indicate any accommodation request[s] asserted by Mr. Butcher.

nonetheless appropriate [in favor of the employer] because Cook County had a legitimate nondiscriminatory reason for firing Bodenstab ….”); *Patton v. Indiana Univ. Bd. of Trs.*, No. 1:20-CV-1583-JRS-MJD, 2023 WL 1798735, at *13 (S.D. Ind. Feb. 7, 2023) (“The ‘direct threat’ defense is an affirmative defense that the IU Defendants may choose to raise but are not required to raise. Defendants instead chose to defend against Patton's claims by arguing he cannot show he was ‘disabled’ and that his alleged disability was not a ‘but for’ cause of the denial of his request for readmission. The fact that the IU Defendants have not raised a ‘direct threat’ affirmative defense is not a bar to summary judgment on Patton's ADA and Rehabilitation Act claims. The Court grants Defendants' Motions for Summary Judgment as to Counts III–IV and XIII–XIV.”); *Miller v. Illinois Dep't of Corr.*, 107 F.3d 483, 485 (7th Cir. 1997) (“The warden may have fired Miller for an improper purpose, but if she can't perform the essential functions of her job, so that she would have been fired anyway, there has been no violation of the Act and she has no right to relief.”).

If, however, Alto wishes to pursue this direct threat defense moving forward, the Court agrees that Alto must amend its operative answer and plead an affirmative defense. *See Felix v. Wisconsin Dep't of Transportation*, 828 F.3d 560, 569–70 (7th Cir. 2016) (citing *Branham v. Snow*, 392 F.3d 896, 906 (7th Cir. 2004)) (“Because the direct-threat defense is an affirmative defense, it is the employer that bears the burden of proving the defense. Consequently, if WisDOT's motion for summary judgment were grounded in the direct-threat defense, as Felix insists it was, WisDOT would have had to do more than simplify identify evidence supporting the defense; it would have had to demonstrate that the evidence was so one-sided that no reasonable jury could resolve the defense in Felix's favor.”). If Alto wishes to add that affirmative defense, Alto may file a motion for leave to do so within 21 days of this Order, or Alto risks waiving this issue for trial. But even if Alto does not wish to pursue this affirmative defense, the EEOC's Motion is still denied—it has not carried its burden that, as a matter of law, Mr. Butcher could perform the essential functions of the job.

8

**V**

For the reasons set forth above, the EEOC's Motion for Partial Summary Judgment on Liability and Direct Threat Affirmative Defense (D. 37) is denied. After resolving Alto's Motion for Partial Summary Judgment (D. 36), the Court will provide the parties further instructions on setting this matter for a settlement conference and establishing pretrial deadlines.

Should a party file a motion for reconsideration that is subsequently denied by the Court, the party filing the motion will be responsible for the attorneys' fees of the opposing party related to the response to the motion for reconsideration.

*It is so ordered.*

Entered on June 29, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE

9