**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
    Plaintiff,

v.

ALTO INGREDIENTS, INC.,
    Defendant.

Case No. 1:24-cv-01269

### Order

Now before the Court is the Defendant, Alto Ingredients, Inc.'s ("Alto") Motion for Partial Summary Judgment against the Plaintiff, the U.S. Equal Employment Opportunity Commission ("EEOC").[1] For the reasons set forth below, Alto's Motion is denied.

### I

On April 30, 2026, Alto filed the pending Motion. (D. 36). The EEOC timely filed a response (D. 41), to which Alto replied. (D. 44). The Motion is therefore ripe for disposition.

### II

This case centers on the EEOC's allegations that Alto fired Mark Butcher because of his disability. On September 24, 2020, Mr. Butcher applied to work for Alto as an Instrument Electrician. Alto arranged an initial interview for Mr. Butcher, conducted by two of Alto's supervisors (Don Archdale and Mike Perfetti). During that interview, Mr. Butcher disclosed to Alto that he was "a disabled vet."

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

(D. 37-1 at ECF p. 184). Specifically, he testified that he: has "pain in [his] back", "since 1985", was "going through a lot of pain, and sometimes [his] leg buckles a little bit, and [he catches] himself, and [he is] good." (*Id*. at ECF p. 184; 186; 209).

Mr. Butcher then underwent a second interview with Alto, after which Alto's managers recommended he be hired. Prior to officially being hired, Alto required Mr. Butcher to complete a "pre-hire medical examination" and a "Job Task Assessment". (D. 37 at ECF p. 8). He completed both steps to Alto's satisfaction, and, on October 16, 2020, Alto hired him as an Instrument Electrician.

Alto then commenced a 60-day performance review period and 120-day probationary period. During that time, the supervisors reportedly received feedback from other employees that Mr. Butcher had trouble navigating the plant, using ladders, working with his hands above his head, and other physical infirmities. On January 14, 2021, Alto's supervisors suspended Mr. Butcher and recommended him for termination. Soon after, he was terminated.

In response to his termination, Mr. Butcher, via the EEOC, filed the pending action. The Complaint seeks both actual and punitive damages, as well as injunctive relief, for unlawful termination under the ADA and accompanying "emotional pain, suffering, loss of enjoyment of life and humiliation". (D. 1 at ECF p. 6). In the pending Motion, Alto seeks to dispose of the EEOC's request for front pay, back pay, and punitive damages. Alto further moves for summary judgment against the EEOC's claim for emotional distress.

### III

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp.*, 477

U.S. at 323-24. Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrate that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993). "The parties must support their assertions that a fact cannot be or is genuinely disputed by citing to 'particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .'" *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment . . . [I]t is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Id.* at 248. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." *Anderson*, 477 U.S. at 255 (1986). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to successfully oppose a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 250. "The same standard applies when considering cross-motions for summary judgment." *City of Chi. v. Equte LLC*, 693 F. Supp. 3d 879, 889 (N.D. Ill. 2023) (citing *Int'l Bhd. of Elec. Workers, Loc. 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002)).

Therefore, when considering the Plaintiff's Motion for Summary Judgment, the Court views all the evidence in the light most favorable to Defendants, and when considering Defendants' Motion for Summary Judgment, the Court views all the evidence in the light most favorable to the Plaintiff. *Id.*

## IV

The Court will address in turn Alto's arguments in favor of summary judgment against the EEOC's claims for: front pay, back pay, punitive damages, and emotional distress.

## A

As to front pay, the EEOC dictates in its response that "[t]he EEOC does not seek front pay in this action", and thus "Alto's request for summary judgment on that remedy should be denied as moot." (D. 41 at ECF p. 24). The Court agrees, and denies as moot this portion of Alto's Motion.

## B

Next, Alto seeks summary judgment against the EEOC's request for back pay. "The district court has broad equitable discretion to fashion back pay awards to make the [discrimination] victim whole." *David v. Caterpillar, Inc.*, 324 F.3d 851, 865 (7th Cir. 2003). "Complete relief for a victim of discrimination generally will include an award of back pay; indeed, such an award is presumptively proper once a violation has been shown." *Ortega v. Chicago Bd. of Educ.*, 280 F. Supp. 3d 1072, 1078 (N.D. Ill. 2017) (quoting *E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1580 (7th Cir. 1997)). "Back pay represents the wages the plaintiff would have earned had she not been fired." *Id.*

Here, Alto argues that summary judgment is proper "on the issue of back pay beyond one month of loss, and more likely altogether." (D. 36 at ECF p. 6). In support, Alto argues that less than a month separated Mr. Butcher's termination by Alto (January 14, 2021) and his subsequent employment with Amentum

(February 15, 2021). Alto further argues that, at both Alto and Amentum, Mr. Butcher received the same wage, was scheduled to work the same number of hours, and received similar benefits. Accordingly, because "there is no wage loss to compensate," Alto argues that summary judgment is proper against the EEOC's request for back pay. (*Id.* at ECF p. 7).

In response, the EEOC argues that if the EEOC prevails, there exists a strong presumption of backpay. Moreover, the EEOC argues that there is in fact evidence that, until February 2022 (when Mr. Butcher "left Amentum to undergo surgery on his sciatic nerve"), Mr. Butcher would have earned more at Alto than at Amentum. (D. 41 at ECF p. 22). The EEOC argues, then, that at the very least back pay is proper for the period in which Mr. Butcher was unemployed, and at most should stretch until February 2022.

The Court finds that Alto has failed to carry its burden that, as a matter of law, backpay should be unavailable or limited to Mr. Butcher's time of unemployment. For one, Mr. Butcher (in the event the EEOC prevails) almost certainly would be entitled to backpay for his period of unemployment. Alto far from carries its burden on that score, and fails to explain why the Court should wholly disregard Mr. Butcher's period of unemployment. So, for the period between Mr. Butcher's termination (January 14, 2021) and his next job (February 15, 2021), a reasonable juror certainly could conclude that back pay is proper.

As to whether the timeframe should extend to February 2022 (when Mr. Butcher stopped working for Amentum to surgically repair his sciatica), there also exists a question of fact. The EEOC contends that, had Mr. Butcher remained with Alto for that time rather than Amentum, he would have earned $5,200 more with Alto (in addition to his $5,100 of lost wages while unemployed). Further, as the EEOC points out, Alto has not established as a matter of law that the benefits

between both employers would be materially identical, either.[2] Given this question of fact, summary judgment is improper and Alto's Motion is denied. *See Sykes v. Franciscan Skemp Healthcare,* No. 99-C-734-C, 2000 WL 34235984, at \*4 (W.D. Wis. Aug. 21, 2000) (denying motion for summary judgment and opting to "determine at trial whether plaintiff is entitled to back pay"); *U.S.E.E.O.C. v. R.R. Donnelley & Sons Co.*, No. 01 C 4218, 2002 WL 1750946, at \*4 (N.D. Ill. July 29, 2002) ("Donnelley also contends that it should not be responsible for back pay damages prior to May 28, 1998. Donnelley argues … that a defendant's offer to satisfy a plaintiff's entire demand moots the plaintiff's claim. The parties dispute, however, whether Donnelley's check represented the total back pay amount to which Mateski would be entitled if he succeeded on his claims. The EEOC argues that Mateski's employment would have lasted longer than the eight weeks that the check represented; in contrast, Donnelley argues that the check represented more than Mateski was owed. For these reasons, the Court declines to completely remove the back pay issue from the case.").

## C

Alto also seeks summary judgment against the EEOC's request for punitive damages. "Punitive damages are available for violations of the Americans with Disabilities Act if the defendant discriminated 'with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" *E.E.O.C. v. Flambeau, Inc.*, 846 F.3d 941, 947 (7th Cir. 2017) (quoting 42 U.S.C. § 1981a(b)(1)). To obtain punitive damages, a "plaintiff must show that the employer acted with 'malice' or 'reckless indifference' toward the employee's rights under federal law."

---

[2] Back pay includes "benefits [the plaintiff] would have received from the Defendant if [the plaintiff had not been terminated]." *Ortega*, 280 F. Supp. 3d at 1078 (quoting 7th Cir. Pattern Civil Jury Instruction 3.11 (2015)).

*E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 835 (7th Cir. 2013) (citing *Kolstad v. American Dental Association*, 527 U.S. 526, 533-39 (1999)).

Here, Alto argues that it made good faith efforts to comply with anti-discrimination law via its "written equal employment opportunity and anti-discrimination policies" and related "training". (D. 36 at ECF p. 7). Moreover, Alto argues that "[t]here is no evidence that any decision-maker acted with malice or reckless disregard for Mr. Butcher's rights." (*Id.* at ECF p. 8). In fact, Alto asserts that it hired Mr. Butcher knowing that he had a disability, which undermines any finding of bad faith.

The EEOC, meanwhile, argues that a reasonable jury could find that Alto acted with reckless indifference. On that front, the EEOC asserts that Alto's decisionmakers were aware of federal law, yet actively disregarded it when terminating Mr. Butcher. They knew their obligations under the ADA, received workplace training, and understood Alto's policies, yet terminated Mr. Butcher because of his disability, avers the EEOC.

The Court agrees with the EEOC that, at this stage and drawing reasonable inferences in the EEOC's favor, there exists a factual dispute that staves off summary judgment. A reasonable jury could find that because Alto's decisionmakers (1) knew that Mr. Butcher was disabled, (2) were subject to Alto's written anti-discrimination policies, (3) were trained on those policies, and (4) were thus aware of their obligations under the ADA, they acted with reckless indifference to federal law when they terminated Mr. Butcher because of his disability. The question is simply too fact dependent for the Court to make a finding as a matter of law at this stage. Absent an extremely compelling record of good faith and compliance with federal law (which, here, is absent), punitive damages are more properly resolved by a jury. *See Jones v. Conagra Grocery Prods. Co., LLC*, No. 07-CV-638-BBC, 2009 WL 799671, at *6 (W.D. Wis. Mar. 23, 2009)

(denying the defendant's motion for summary judgment regarding punitive damages as "premature" because "[t]he jury will be in a much better position after hearing all of the evidence to determine whether defendant acted in good faith"); *see also R.R. Donnelley & Sons Co.*, 2002 WL 1750946, at *5 (holding that "[t]hough Donnelley's efforts ultimately may preclude a punitive damages award, it is premature to determine that the EEOC is not entitled to such an award as a matter of law"); *Equal Emp. Opportunity Comm'n v. Wal-Mart Stores, Inc.*, 345 F. Supp. 3d 1046, 1064 (W.D. Wis. 2018) ("In sum, until the facts are further developed at trial, it is not possible to determine as a matter of law whether punitive damages would be appropriate in this case in the event that defendants are found liable.").

## D

Lastly, Alto argues that summary judgment is proper as to the EEOC's emotional distress claim. Under 42 U.S.C. § 1981a(b)(3), an ADA plaintiff may seek compensatory damages for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses …." In its Complaint, the EEOC accordingly seeks damages for "emotional pain, suffering, loss of enjoyment of life and humiliation, in amounts to be determined at trial." (D. 1 at ECF p. 6).

Alto argues that, per Mr. Butcher's testimony, "his emotional distress cannot be attributed to Alto with any degree of reliability." (D. 36 at ECF p. 10). That is because, Alto argues, "Mr. Butcher's mental health treatment predates his employment at Alto by decades." *Id*. In fact, asserts Alto, Mr. Butcher has received mental health treatment since the 1980s, which has been caused by stressors such as "his wife's bipolar disorder, family conflict between wife and son, prior job terminations …, and generalized anxiety about world events." *Id*. Thus, it is not only unlikely that Alto is responsible for Mr. Butcher's emotional distress, but

8

"impossible for Mr. Butcher to apportion his distress between Alto and his many other independent causes." (*Id*. at ECF p. 11).

Conversely, the EEOC argues that the extent to which the Alto termination triggered, resurfaced, and/or originated Mr. Butcher's distress is a question for a jury. In support, the EEOC highlights Mr. Butcher's testimony that "his discriminatory termination was significantly distressing", and "was not temporary or short lived". (D. 41 at ECF p. 11).

Alto has failed to carry its burden that no reasonable juror could conclude Alto caused Mr. Butcher recoverable emotional distress. The Court acknowledges that Mr. Butcher has had a history of emotional distress. But a reasonable juror certainly could conclude that Mr. Butcher's allegedly-discriminatory termination triggered and/or exacerbated Mr. Butcher's mental health struggles. Indeed, not only losing one's job, but losing it because of disability discrimination (as Mr. Butcher alleges), certainly could make a cognizable emotional impact when paired with preexisting conditions. This couples with Mr. Butcher's testimony that "getting fired from that job didn't make me feel very good. So yeah that set me back." (D. 41 at ECF p. 16). He further testified that his termination "triggered a lot", and that it "still bothers him now". *Id*. This testimony, while likely not infallible, is enough to reach a fact finder. *See Tullis v. Townley Engineering & Manufacturing Co.*, 243 F.3d 1058, 1068 (7th Cir. 2001) ("An award for nonpecuniary loss can be supported, in certain circumstances, solely by a plaintiff's testimony about his or her emotional distress.").

Of course, a jury could find Mr. Butcher's testimony unpersuasive or worthy of only minor damages. But, drawing inferences in favor of the EEOC, the question of Mr. Butcher's emotional distress is too fact laden for the Court to decide at summary judgment. *See, e.g., Wahl v. N. Tr. Corp.*, No. 00 C 6357, 2002 WL 1769983, at *7 (N.D. Ill. July 31, 2002) (quoting *United States v. Balistrieri*, 981 F.2d 916, 933

(7th Cir. 1992)) ("In this case, Wahi's testimony provides direct evidence of emotional distress. Wahi testified that he was depressed because Schneider had a 'design' to get rid of him and carried it out. Wahi further testified that his heart condition escalated after his termination, evidenced by an increase in palpitations, because at the time leading up to and following his termination, he was nervous. As the court in *Balistrieri* noted, a 'jury is in the best position to evaluate ... the witness's explanation of [the plaintiff's] injury. Moreover, the jury is able to examine the witness personally; a jury may glean as much if not more about a witness's emotional state from the witness's demeanor than from his attempts to explain the nature of his injury in words.' … NTC's motion for summary judgment on this issue is denied."); *U.S. EEOC v. AIC Security Investigations*, 55 F.3d 1276, 1285–86 (7th Cir. 1995) (upholding award of $50,000 for emotional distress even though plaintiff did not seek professional treatment when he testified that he experienced "depression, rage and fear resulting from his sudden firing"); *Clark v. Metro Health Found., Inc.*, 90 F. Supp. 2d 976, 981 (N.D. Ind. 2000) ("But in any case, medical and other expert evidence is not required to support a compensatory damages award for emotional distress. The jury reasonably could have found, that as a result of this discrimination, Ms. Clark and Ms. Clinton suffered emotional pain and were embarrassed and humiliated and that Ms. Clinton continues to suffer today due to the conflict between her human emotions and her religious beliefs. This evidence amply supports an award of compensatory damages for emotional suffering ….").

10

## V

For the reasons set forth above, Alto's Motion for Partial Summary Judgment (D. 36) is denied. This matter is referred to the Magistrate Judge for a settlement conference. If necessary, the Court will set pretrial deadlines and trial dates after conclusion of the settlement conference.

Should a party file a motion for reconsideration that is subsequently denied by the Court, the party filing the motion will be responsible for the attorneys' fees of the opposing party, related to their response to the motion for reconsideration.

*It is so ordered.*

Entered on July 1, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE

11